**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NATASHA WALKOWICZ SHEA,** | : |
| | : |
| **Plaintiff,** | :   **3:23-CV-814** |
| | :   **(JUDGE MARIANI)** |
| **v.** | : |
| | : |
| **KALAHARI RESORTS &** | : |
| **CONVENTIONS-POCONOS,** | : |
| **KALAHARI RESORTS PA, LLC, and** | : |
| **KALAHARI RESORTS, LLC,** | : |
| | : |
| **Defendants.** | : |

**<u>MEMORANDUM OPINION</u>**

**I. Introduction**

"Defendants' Motions for Post-Trial Relief Pursuant to F.R.C.P. 50(b)" (Doc. 95) is

pending before the Court.  The Motion was timely filed after a five-day jury trial which

culminated in a verdict in favor of Plaintiff Natasha Walkowicz Shea.  Specifically, the jury

found by a preponderance of the evidence that (1) Defendants were negligent, (2)

Defendants' negligence was a factual cause of harm to Plaintiff, and (3) Plaintiff was not

negligent.  (Doc. 89 at 2-3.)  The jury found that Plaintiff was entitled to a damages award of

$2,400,000.00.[1]  (Doc. 89 at 5.)

---

[1] The award consisted of $200,993 for past medical expenses, $469,100 for future medical expenses, $1,610,000 for future lost earning capacity, and $119,907 for past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life. (Doc. 89 at 5.)

Defendants now argue that judgment as a matter of law is warranted because Plaintiff's action was barred by the choice of ways doctrine (Doc. 96 at 4) and Plaintiff failed to prove that her alleged injuries were caused by the fall in question (*id.* at 10). Defendants also assert that they are entitled to a new trial on two grounds: 1) "Plaintiff's counsel, in bad faith, asked a question that stated the content of inadmissible evidence to the jury that was so highly prejudicial that it could reasonably have impacted the verdict" (*id.* at 14); and 2) "the Court erred in refusing to charge the jury on the choice of ways doctrine, and such error could reasonably have impacted the verdict" (*id.* at 18).

For the reasons discussed below, the Court concludes that Defendants have failed to establish entitlement to relief on any of the grounds asserted.

## II. BACKGROUND

Plaintiff filed the Complaint in the above-captioned action on May 18, 2023. (Doc. 1.) Plaintiff alleged that she slipped and fell on ice while walking through the Kalahari parking lot on March 11, 2023, at approximately 9:00 p.m. (*Id.* ¶¶ 13, 22.) She further alleged that her injuries included

> injuries to her muscles, bones, tendons, ligaments, back, legs, lumbar herniated discs aggravations to pre-existing lumbar disc injures and degeneration that required a multiple level lumbar fusion surgery performed less that one week after the fall, lumbar radiculopathy, foot drop, numbness, tingling, shooting pains, loss of function from her lower back into her legs, and aggravation of preexisting conditions.

(*Id.* ¶ 26.) Defendants asserted that Kalahari Resorts LLC

2

plowed and salted its parking lots and was not negligent in maintaining the property it leased from Kalahari Resorts, LLC, during winter weather conditions on the date plaintiff fell. Plaintiff was herself negligent in taking a short-cut over an uncleared area of a parking lot, rather than keeping to the cleared area of the lot.

(Doc. 14 at 2.)

The case proceeded to trial on Monday, March 2, 2026, and the jury returned its verdict for Plaintiff on Friday, March 6, 2026. (*See* Docs. 100-104.) Testimony began on the second day of trial with Plaintiff calling the following five witnesses: 1) Keith Bergman who was offered and admitted as an expert in the field of civil engineering with expertise in pedestrian safety and properly management (Doc. 101, Trial Transcript ("T. Tr.") Day 2, 32:21-24); 2) John Scala who was offered and admitted as an expert in the field of meteorology (*id.* at 63:1-5); 3) Ronald D'Aurizio, Plaintiff's fiancé (*id.* at 76:8-9); 4) John Dieckman who was offered and admitted as a vocational specialist (*id.* at 52:4-9); and 5) Donald Pleau, the resort general manager at Kalahari Resort at Pocono Mountains, Pennsylvania, called as on cross-examination (*id.* at 132:21-133:19).

On the third day of trial, Plaintiff testified and five additional witnesses were called: 1) Andrew Verzilli who was offered and admitted as an expert in the field of economics and earning capacity (Doc. 102, T. Tr. Day 3, 7:24-8:3); 2) Plaintiff's daughter Sophia Shea (*id.* at 24:20-21); 3) Plaintiff's daughter Savanna Shea (*id.* at 44: 19-21); 4) Davide Wells-Roth, M.D., who testified by Zoom and was offered and admitted as an expert in the field of neurosurgery (*id.* at 167:16-20); and 5) Alex Karras who was presented by video deposition

3

and was offered and admitted as an expert in the field of life care planning (*id.* at 210:5-6; Doc. 103, T. Tr. Day 4, 9:8-11:7).

The fourth day of trial began with Plaintiff playing the deposition of Nirav K. Shah, M.D., who was admitted as an expert in the field of neurosurgery. (Doc. 103 at 8:18-20, 9:8-11:7.) After presenting Dr. Shah's deposition testimony, Plaintiff rested. (Doc. 103 at 11:11-13.)

Defendants then moved for a directed verdict pursuant to Federal Rule of Civil Procedure 50(a). (Doc. 103 at 13:9-10.) Defendants' counsel asserted that

> we think the Choice of Ways Doctrine is going to bar plaintiff's action here.
>
> Dr. Shea's testimony could not have been more clear that she had a clear path to her vehicle. She voluntarily chose a different path that went right at snow that she saw, and that caused her fall.
>
> I'm not sure that there's any clearer example of the choice of ways which is already -- it's certainly, I believe, illustrated adequately on the video. But we have the plaintiff's admissions for all that is required under Choice of Ways Doctrine. And under the Choice of Ways Doctrine, it acts as a bar to recovery.
>
> So under that, Your Honor, I believe the defendant is entitled to a directed verdict.

(*Id.* at 13:10-24.)

Plaintiff's counsel refuted Defendants' argument, first asserting that the choice of ways doctrine "is basically another way of saying that plaintiff assumed the risk." (*Id.* at 14:4-5.) Pointing to Plaintiff's testimony that she fell on black ice and never intended to walk on snow (*id.* at 14:10-16:5), Plaintiff's counsel posited that Plaintiff

4

never testified to anything remotely resembling that she took anything that could be described as an unsafe or hazardous path.

> And this doctrine is very clear. The *Carrender* [*v. Fitterer*, 469 A.2d 120, 125 (Pa. 1983),] case which is usually cited, there's a woman who said, I saw it was icy; I understood it was dangerous; I chose to go on it instead of around it. That's what it takes to win under this Choice of Ways Doctrine. They have not even come close, not even an iota of evidence that should grant this.

(*Id.* at 16:5-13.)

After reviewing the Court's role in deciding a Rule 50(a) motion, the undersigned summarized the issue:

> the issue before me is whether the evidence in this case is such that without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the issue is whether there can be only one conclusion as to the verdict that reasonable people could reach on the claim for which now judgment as a matter of law is sought.

> And that would have to be that a reasonable jury would not have a legally sufficient basis to find for the non-moving party. Here, I cannot say that there is no legally sufficient basis on which a reasonable jury could find for the non-moving party, that is, the plaintiff in this case.

> So I have to deny your 50(a) motion. And let me just indicate for the record, I have looked at a good deal of the case law that applies in circumstances such as this one. And it is true that [in] *Carrender v. Fitterer*, 469 A.2d 120 at 125, the [Pennsylvania] Supreme Court ruled that a plaintiff assumed the risk of injury when she fell after parking her car in an icy area knowing that there were safer areas in which to park.

> I accept that that's a principle of law. But that is something that you are going to have to argue to the jury in this case. And likewise, there are other issues that come up here that make it pretty clear that the kinds of determinations that are at issue in this case are for the jury and not for me.

5

(Doc. 103 at 19:12-20:11.)  After citing cases where snow and ice were at issue, the undersigned concluded:

> there are issues of fact here that relate to precisely who you believe with respect to not only the actions of the plaintiff, but as to the conditions that were in application on March 11, 2023, as well as what actions were taken by Kalahari to discharge its responsibility to business invitees such as the plaintiff.

(*Id.* at 21:21-22:4.)

Defendants' counsel did not respond to the Court's ruling but moved for judgment as a matter of law on another basis, asserting that Plaintiff had not shown that the fall caused her injuries.  (*Id.* at 22:5-8.)  Counsel based this assertion on the testimony of Dr. Wells-Roth confirming that the MRI he relied on to perform the back surgery was done before Plaintiff's fall at Kalahari and no imaging after her fall "objectively attribute[s] any new anatomical pathology to the fall."  (*Id.* at 22:10-23:5.)  Plaintiff's counsel responded that, to grant Defendants' motion, the Court "would have to assume as a matter of law that Dr. Natasha Walkowicz Shea had no injury whatsoever and no reasonable juror could find she had any injury whatsoever. . . . He's basically asking to bar an aggravation injury."  (*Id.* at 23:9-11, 24:3-4.)

The Court agreed with Defendants' counsel that a part of Dr. Wells-Roth's narrative was problematic (*id.* at 25:22-27:6), but concluded that Defendants' counsel presented a "factual argument" which was not for the Court to decide (*id.* at 27:10-16).

6

Following the Court's denial of Defendants' Rule 50(a) motion, Defendants presented their only witness, Albert J. Fennoy, M.D., who was offered and admitted as an expert in the field of neurosurgery. (*Id.* at 37:17-23.)

Because the parties joint proposed jury instructions submitted to the Court were presented in a summary list fashion and contained numerous irrelevant instructions, the parties agreed at the end of the fourth day of trial that the Court would prepare jury instructions for their review at a Charge Conference to be held the following morning. (*Id.* at 80:3-82:2.) The parties also understood that they could object to the Court's proposed instructions at the Charge Conference. (*Id.* 82:1-5.)

The fifth day of trial began with the parties' review of the Court's proposed jury instructions which was followed by the Charge Conference. (Doc. 104, T. Tr. Day 5, 2:5-8.) The Court began by asking if the parties had any objections. (*Id.* at 2:9-10.) Defendants did not object but asked that two charges be added--a charge on the choice of ways doctrine and a charge regarding an adverse inference for Plaintiff's failure to call someone from her workplace regarding her potential loss of employment. (*Id.* at 3: 18-4:4.) Plaintiff's counsel responded that a choice of ways instruction was improper based on Pennsylvania State Civil Jury Instructions which direct that "under the banner of assumption of risk[,] there should not be a charge [given to the jury].' (*Id.* at 4:23-5:5.) Plaintiff's counsel also refuted the propriety of an adverse inference instruction. (*Id.* at 5:6-22.)

7

The Court concluded that neither requested instruction was appropriate. As relevant to the choice of ways issue now raised by Defendants, Defendants' counsel stated,

> I didn't know if the Court was willing to add anything on choice of ways or whatever -- you know, however the Court decides. But I do think it might be – some appropriate language not in -- that goes somewhat in step with the Hills and Ridges that you've already –

(*Id.* at 14:3-7.) The undersigned responded as follows:

> I thought about that quite a bit last evening. And I'm looking at Pennsylvania Jury Instruction 13.220 regarding assumption of risk. . . . [I]t begins by saying, no jury instruction is provided here because assumption of risk is a question for the Court to decide upon a non-suit motion and not a matter for jury determination in negligence actions.
>
> And then later on, in the fourth paragraph, it says, quote, assumption of the risk remains a viable defense when the Court can say to a certainty that the plaintiff's comparative negligence is 100 percent. In that case, a non-suit should be granted. In *Carrender v. Fitterer*, 469 A.2d 120, 125, . . . years after comparative negligence was the law, the Supreme Court ruled that a plaintiff assumed the risk of injury when she fell after parking her car in an icy area knowing that there were safer areas in which to park.
>
> This is a matter on which you did make your 50(a) motion; and as to which after considering it, I denied it. So to the extent that I should give an additional instruction, I don't read 13.220 as requiring me that I do so.
>
> Again, the first paragraph says, no jury instruction is provided here because assumption of the risk is a question for the Court to decide in a non-suit motion and not a matter for jury determination in negligence actions. I have decided it via 50(a).

(*Id.* at 14:8-15:7.) Defendant's counsel responded: "Very well, Your Honor. Thank you." (*Id.* at 15:8.) There was no further discussion of the matter.

8

Later that day, the jury returned the verdict for Plaintiff, awarding her a total of $2,400,000. (*See* Doc. 89 at 5.)

Defendants filed the pending Motion (Doc. 95) and supporting brief (Doc. 96) on April 2, 2026. They assert relief pursuant to Federal Rule of Civil Procedure 50(b) on the grounds set out above. *See supra* p. 2. Plaintiff filed her opposition brief (Doc. 99) on April 14, 2026. Plaintiff maintains that Defendants are not entitled to judgement as a matter of law pursuant to Rule 50(b) and they are not entitled to a new trial pursuant to Federal Rule of Civil Procedure 59. (Doc. 99 at 1.) Defendants did not file a reply brief and the time for doing so has passed. Therefore, this matter is ripe for disposition.

### III. STANDARD OF REVIEW

#### A. Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(a),

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a). Under Rule 50(b),

9

> [i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b).

The Court can only address issues raised in a Rule 50(b) motion which were first raised in a timely Rule 50(a) motion. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172 (3d Cir. 1993) ("In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion."). "Absent a motion in accordance with Federal Rule of Civil Procedure 50(a), judicial reexamination of the evidence abridges [a party's] right to a trial by jury." *Id.* at 1173 (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 183 (3d Cir. 1992)).

However, if the issues raised in a Rule 50(b) motion have been properly preserved, the Court may grant a motion for judgment as a matter of law if,

> viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.

*Id.* at 1166 (internal citations omitted). In doing so, "the court should review the record as a whole, [but] must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). "Although sometimes worded differently depending on the timing of the motion, the standard for reviewing the denial of a pre-verdict and a post-verdict motion for judgment as a matter of law is essentially the same." *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1234 n.8 (4th Cir. 1996) (citing 5A Moore's Federal Practice ¶ 50.01-1 at 50-21 (1996)).

"[J]udgment as a matter of law should be granted sparingly." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004); *see also McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (A motion for judgment as a matter of law "'should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law.'") (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). Nonetheless, "more than a scintilla of evidence is needed to sustain a verdict. Accordingly, 'we will grant judgment as a matter of law where the record is critically deficient of the minimum quantum of evidence in support of the verdict.'" *CGB Occupational Therapy*, 357 F.3d at 383 (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)) (internal alterations omitted).

## B. <u>Motion for a New Trial</u>[2]

In addition to a motion for judgment as a matter of law, a losing party may also move for a new trial or to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59. *See* Fed. R. Civ. P. 50(b) (allowing Rule 50(b) movant to "include an alternative or joint request for a new trial under Rule 59").

"The court may, on motion, grant a new trial on all or some of the issues – and to any party ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Court may grant a new trial "purely on a question of law;" or to correct a previous ruling "on a matter that initially rested within the discretion of the court, e.g. evidentiary rulings or prejudicial statements made by counsel;" or "because [the Court] believes the jury's decision is against the weight of the evidence;" among other grounds. *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993) (internal citations omitted). While the Court has wide discretion to order a new trial to correct rulings that initially rested in its discretion, it has relatively narrow discretion to overturn a verdict on the grounds that the verdict is against the weight of the evidence. *Id.* This is because

> where no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground

---

[2] Defendants do not address Rule 59 in their pending motion or brief (Docs. 95, 96). However, Defendants seek a new trial based on two issues not raised in their Rule 50(a) motion and are therefore not cognizable under Rule 50(b). Because Rule 59 governs Defendants' request for a new trial, the Court sets out the relevant law and, because Plaintiff considers the new issues pursuant to Rule 59 (Doc. 99 at 23), the Court will address the merits of the claims rather than deem them waived without further consideration. *See infra* p. 20.

> that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts.

*Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960).

> Accordingly, the district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand. Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations.

*Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991) (internal citations and

quotations omitted).

## IV. ANALYSIS

### A. Rule 50(b) Motion for Judgment as a Matter of Law

As set out above, Defendants now argue that judgment as a matter of law is

warranted because Plaintiff's action was barred by the choice of ways doctrine (Doc. 96 at

4) and Plaintiff failed to prove that her alleged injuries were caused by the fall in question

(*id.* at 10). The Court concludes that these issues are properly raised in a Rule 50(b)

motion because they were raised at trial in Defendants' Rule 50(a) motion. *See supra* pp.

4-6. The Court further concludes that Defendants have not shown entitlement to the relief

requested.

## 1. Choice of Ways Doctrine

Defendants first contend that they "are entitled to a directed verdict because Plaintiff's action was barred by the choice of ways doctrine." (Doc. 96 at 4.) Plaintiff responds that the "evidence does not establish a choice of ways defense because Plaintiff did not see the ice she slipped on and there was no 'safe' path because there were icy conditions in the path Defendants alleged was safe due to Defendants failure to salt." (Doc. 99 at 4.)

The choice of ways doctrine applies "[w]here a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence." *Quinn v. Funk Building Corp.*, 263 A.2d 458, 461 (Pa. 1970). In 1976, 47 Pa. C.S. § 7102 essentially replaced contributory negligence with comparative negligence, stating the general rule that

> "[i[n all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa. C.S. § 7102(a). After Pennsylvania adopted the comparative negligence standard, the choice of ways doctrine was defined as follows: under the doctrine, recovery may be barred where there is "(1) a safe course, (2) a dangerous course, and (3) facts which would

14

put a reasonable person on notice of the danger or actual knowledge of the danger."

*Updyke v. BP Oil Co.*, 717 A.2d 546, 552 (Pa. Super. 1998) (citations omitted). "The 'choice

of ways' doctrine has a narrow application and it should only be applied in 'the clearest

case.'" *Mirabel v. Morales*, 57 A.3d 144, 154 (Pa. Super. 2012) (quoting *Oswald v. Stewart,*

448 A.2d 1, 2 (Pa. Super. 1982)). In *Updyke*, the Superior Court found that the doctrine did

not apply where a plaintiff who was an invitee sustained injuries when she fell on a patch of

ice and "had neither actual nor constructive notice of the ice patch." 717 A.2d at 551.

As set out above, the Court reviewed evidence related to the choice of ways doctrine

and concluded that a reasonable jury would have a legally sufficient basis to find for

Plaintiff. *See supra* p. 5. With their Rule 50(b) Motion, Defendants do not present any

evidence that changes the Court's Rule 50(a) determination.

Defendants rely on the following testimony to show that Plaintiff chose an unsafe

path where "she observed a small amount of snow where a car had been parked" rather

than an available safe path (Doc. 96 at 8):

> "Q: But the actual lane of traffic that you could traverse, walk, drive was safe and not covered with snow or ice, correct?
>
> A: It appears to not be covered with snow or ice, the roadway, where cars drive.
>
> Q: And so you would agree, you had a choice of which direction to take to go to your vehicle from the cheerleading competition, correct?
>
> A: Yes.

\* \* \* \* \*

15

Q: Now, one of the things you told us in your deposition is that you saw the snow?

A: Yes.

Q: So you made a conscious decision, despite seeing the snow, to take a path of travel instead of taking the one that you clearly knew was unobstructed, agreed?

A: I took the path to go around the snow on the inside of the parking lot because there's traffic that goes on the main part.

Q: Now, as you look at this still shot, there is no traffic coming at this point in time, is there, ma'am?

A: Right. But I would rather not walk in the walkway of—or in the cars' way."

(Doc. 96 at 8-9 (quoting Doc. 102, T. Tr. Day 3 at 130/9-16; 131/13-24).)

This is an accurate recitation of Plaintiff's testimony, but it does not support Defendants' conclusion that it shows that Plaintiff's action was barred by the choice of ways doctrine. (Doc. 96 at 9.) In the portion of this testimony eliminated from the quoted material, Defendants' counsel stopped the video which showed the point before Plaintiff veered toward her car. The video showed a small mound of snow on Plaintiff's right. Regarding this scene, Defendants' counsel asked, "At this point, had you continued to simply walk straight or walk to the left, you would have avoided the snow that you eventually fell on. You would agree with that?" (Doc. 102 at 131:1-3.) Plaintiff answered, "I can't speculate that there wouldn't be black ice anywhere." (*Id.* at 4-5.) Further, in the quoted testimony, Plaintiff clearly states that her planned path was to go *around* the snow en route

16

to her car.  The testimony establishes that snow was visible but not that ice was visible.

Importantly, Plaintiff clearly stated in earlier testimony that she fell on "black ice":

> Q. Okay. So tell us about what happened when you were walking towards your car?
>
> A. I -- because I moved my car a couple times that day, I thought I parked in that first row. So I went right to that first row and realized that -- there was like a black car, I think, there -- and then went to the second row where I realized that's where I parked. So in doing so, I approached that spot and fell on black ice.
>
> Q. And did you see that black ice before you fell on it?
>
> A. No, hm-um.

(Doc. 102 at 67:13-22.)

The foregoing unrefuted testimony supports a conclusion that Plaintiff fell on black ice and she "had neither actual nor constructive notice of the ice patch," *Updyke*, 717 A.2d at 551.  Therefore, Defendants' assertion that they are entitled to judgment as a matter of law on the choice of ways issue is without merit.

### 2. Causation

Defendants next assert that they are entitled to judgment as a matter of law because Plaintiff failed to prove that her alleged injuries were caused by the fall in question in that "there was no evidence that the [fall] in Defendants' parking lot caused the back injuries that necessitated surgery, ongoing pain and physical limitations, etc." (Doc. 96 at 10, 13-14.) Plaintiff responds that "the record contains more than what is required" for the jury to have found in favor of Plaintiff on the causation issue. (Doc. 99 at 14.)

17

Defendants' argument misses the mark because the relevant standard does not require that the fall alone caused the back injuries that necessitated surgery and subsequent pain and limitations.  Rather, the jury was instructed that there can be more than one cause of a plaintiff's injury:

> defendants' negligent conduct must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual real factor in causing the harm, even if the result is unusual or unexpected.
>
> . . . To be a factual cause, the defendants' conduct need not be the only factual cause. The fact that some other cause concurs with the defendants' negligence in producing an injury does not relieve the defendants from liability as long as their own negligence is a factual cause of the injury.

(Doc. 104 at 101:17-102:5.)  Importantly, the Court also instructed the jury about how to consider a plaintiff's preexisting physical condition:

> A person who has a preexisting physical condition can recover damages if the defendants' negligence: One, made worse a preexisting condition -- in this regard, defendants can be held responsible only for the harm or the aggravation of a preexisting physical condition that you find was factually caused by defendants' negligence -- and two, factually caused harm worse than expected because of Plaintiff Natasha Walkowicz Shea's preexisting condition or conditions.

(Id. at 109:12-19.)

The testimony of Dr. Wells-Roth, Plaintiff's expert neurosurgeon, and Dr. Fenoy, Defendants' expert neurosurgeon, show that there was much discussion about Plaintiff's condition before her fall and that the MRI preceding her post-fall surgery was done on

18

March 9, 2023, i.e., before her March 11, 2023, fall at Kalahari. While the absence of a post-fall MRI meant that neither doctor could testify with certainty about anatomical changes brought about by the fall, both doctors agreed that video footage of the fall showed that Plaintiff did not exhibit an impaired gait before she fell on March 11, 2023. (Doc. 102 at 199:2-12; Doc. 103 at 75:11-76:7.)

On Dr. Wells-Roth's redirect examination, the following dialogue took place:

Q. So I just want to refer back, Dr. Wells-Roth, you note in your report here that when you saw her on 3/13/23, she had severe difficulty with walking and shifting her weight to the right leg. She was also slightly dragging the left foot. I want to show you video footage of about 36 hours before the fall and ask you whether this looks similar to what you encountered in your office.

. . . .

Q. Now, Dr. Shea is going to come out wearing a No. 22 jersey. And I just want you to compare how she's walking here as to how she was walking in your office. Dr. Wells-Roth, prior to her fall, just seconds before her fall, do you see any clear profound limp?

A. On that image, no.

Q. Okay.

A. Not at all.

Q. Do you see her dragging her foot?

A. No.

Q. Would that tell you there was a clear and obvious worsening based on how she was in your office just 36 hours later?

A. Correct.

19

(Doc. 102 at 198:6-199:12.)

Dr. Fenoy also testified about his videotape observations:

Q. Okay. Now, you referenced watching the video of the fall, correct?

A. I do, yes.

Q. Okay. You would agree that video did not show any severe problems with her walking, correct?

A. Correct.

Q. Okay. You would also agree that when she saw Dr. David Wells-Roth on 3/13/23 that she was -- that per his record, she was having severe difficulty with walking and shifting weight to the right leg, correct?

A. Let me just jump to that, if you don't mind?

Q. Absolutely, Doctor.

A. So that was on March 11th of '23?

Q. March 13th of '23, when she saw Dr. David Wells-Roth.

A. I'm sorry. Could you repeat the question?

Q. You would agree that that note states that she's having severe difficulty with walking and shifting weight to the right leg, correct?

A. That's what she says, yes.

Q. Okay. And that note also indicates that she's also slightly dragging the left foot, correct?

A.  On his note, correct.

(Doc. 103 at 75:11-76:7.)

20

The foregoing testimony from the parties' neurosurgical experts are examples of evidence of record which clearly support a conclusion that Plaintiff's fall at Kalahari on March 11, 2023, aggravated a preexisting condition. Therefore, "viewing the evidence in the light most favorable to the nonmoving party," the Court cannot conclude that "there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *McGreevy* 413 F.3d at 364.

## B. Rule 59 Motion for a New Trial

Defendants also assert that, pursuant to Rule 50(b), they are entitled to a new trial on two grounds: 1) "Plaintiff's counsel, in bad faith, asked a question that stated the content of inadmissible evidence to the jury that was so highly prejudicial that it could reasonably have impacted the verdict" (Doc. 96 at 14); and 2) "the Court erred in refusing to charge the jury on the choice of ways doctrine, and such error could reasonably have impacted the verdict" (*id.* at 18). Because these claims were not raised in Defendants' Rule 50(a) motion, they have not been preserved and they are not properly before the Court pursuant to Rule 50(b). *See supra* p. 10. However, considering Defendants' request for a new trial on the identified grounds pursuant to Rule 59, their claims fail. *See supra* n.2.

### 1. Inadmissible Evidence Question

Defendants assert that a question posed to Kalahari's Pocono location general manager, Donald Pleau, was improperly asked, revealed inadmissible evidence, and the

21

harm was not cured with the Court's instruction.  (Doc. 96 at 14.)  Defendants refer to a

question contained in the following dialogue which took place on the second day of trial:

> Q. Okay. Now, you would agree -- and you also -- in addition to verifying the interrogatories, you also verified the request for production of documents, correct?
>
> A. The request for -- I'm sorry?
>
> Q. Production of documents. Do you remember reviewing and verifying another set of discovery questions?
>
> A. Verify the production of the documents that you had requested?
>
> Q. Yeah. And if you don't know, why don't we -- I'm not going to -- you know, why don't we pull up –
>
> A. If you want to pull up the documents, I'm more than happy -- I don't recall -- I don't recall. I'm not saying, I didn't.  I simply don't recall.
>
> MR. LEVY: P-8. Just go down to, I believe, the second to last page.
>
> BY MR. LEVY:
>
> Q. Do you see that here, defendants' reply to request for production of documents. Do you see that, Mr. Pleau?
>
> A. Okay. Yeah, sure.
>
> . . . .
>
> Q. And it states here that Don Pleau, Jr., hereby states that he is the authorized representative for Kalahari Resorts and, as such, verifies the facts set forth in the foregoing reply to request for production of documents are true and correct, to the best of his knowledge or information and belief and that this verification is made subject to the penalties of 18 Pa.C.S. 4904 relating to unsworn falsification to authorities. Did I read that correctly?

22

A. I didn't deny it. I just didn't recall if I had done it or not. That's my signature on that date.

. . . .

Q. And you would agree with me the documents produced by your attorneys indicated that liability was 70 to 100 percent against Kalahari for this incident?

MR. GING: Objection, Your Honor. May we approach?

THE COURT: Sure.

(At this time, a discussion was held at sidebar as follows:)

MR. GING: In discovery, there was an inadvertent production of a claim note at the outset of the case at which the adjustor at that time looked at the case with little to no information and said 70 percent liability upon Kalahari, 30 percent -- okay. It was an inadvertent disclosure. It's absolutely inadmissible. He just told the jury that we had an evaluation of 70 percent liability. He knows that that is not proper.

THE COURT: All right. Let me make sure I understand what exactly you say he said.

MR. GING: Okay.

THE COURT: And you would agree with me the documents produced by your attorneys indicated that liability was 70 to 100 percent against Kalahari for this incident –

MR. GING: Which is completely irrelevant. What an adjustor –

THE COURT: It is. And I'm not going to allow you to go there.

MR. LEVY: All right. Understood.

MR. GING: Can we have an instruction to disregard that prior question?

THE COURT: Make it from your seat.

. . . .

THE COURT: Mr. Ging, your objection is sustained.

MR. GING: Thank you, Your Honor.

. . . .

MR. GING: Your Honor, I would move to strike plaintiff's last question that was asked of the witness.

THE COURT: Ladies and gentlemen, the question that was asked as well as the answer that was given specifically regarding -- the question was whether or not this witness agreed with documents that allegedly were produced by the attorneys for Kalahari indicating a percentage of liability. The objection was made here at sidebar before me. I sustained the objection. And on request of Mr. Ging, I have also determined that that should be stricken from the record. You should disregard it in its entirety and not make it a basis whatsoever for your discussions when you go at the end of this case to deliberate your verdict. Do we all understand?

(At this time, the jury gave a non-verbal response in the affirmative.)

THE COURT: Very good. Go ahead.

(Doc. 101 at 157:1-161:2.)

As set out above, the Court may grant a new trial "purely on a question of law;" or to correct a previous ruling "on a matter that initially rested within the discretion of the court, e.g. evidentiary rulings or prejudicial statements made by counsel;" or "because [the Court] believes the jury's decision is against the weight of the evidence;" among other grounds. *Klein,* 992 F.2d at 1289-90. Here, the Court gave the instruction requested by Defendants and the matter was not raised again during the trial. *See supra* p. 7. Defendants' counsel

24

did not move for a mistrial or express dissatisfaction with the Court's curative instruction. Rather, Defendants' counsel thanked the Court for consideration of the issue and for agreeing to a curative instruction. *See supra* p. 8. Further, as noted by Plaintiff, Pleau "never answered the question, insurance was never mentioned, and the exhibit was never published to the jury." (Doc. 99 at 24.) Finally, not only did the Court immediately give a curative instruction, but the jury was also instructed several times at the close of the case about matters they must not consider: "any testimony I told you to disregard" is not evidence (Doc. 101 at 95:23-24); "[i]f I sustained an objection, you must disregard the question or the exhibit at issue" (*id.* 96:13-15); and "[e]vidence that I have ordered stricken must be entirely disregarded" (*id.* at 96:22-23).

Given the Court's instructions, "the almost invariable assumption that jurors follow their instructions," *Richardson v. Marsh*, 481 U.S. 200. 206 (1987) (citations omitted), and the isolated incident identified by Defendants, the Court cannot conclude that a new trial is warranted on the basis asserted.

### 2. Choice of Ways Instruction

Defendants next assert that they are entitled to a new trial because the Court did not give the jury an instruction regarding the choice of ways doctrine. (Doc. 96 at 18.) Plaintiff responds that a choice of ways instruction was not warranted because the Court followed Pennsylvania law in declining to charge the jury on the doctrine. (Doc. 99 at 20.)

25

As discussed above, Defendants sought judgment as a matter of law based on the argument that Plaintiff could not recover under the choice of ways doctrine, i.e., that the doctrine's requirements were satisfied and it presented a *complete* bar to recovery. *See supra* pp. 13-16. At trial, the Court rejected that argument in the Rule 50(a) context and the Court now rejects the argument in the Rule 50(b) context.

In keeping with finding that the requirements of the doctrine were not satisfied in the Rule 50(a) context and pursuant to relevant law, the Court did not include a choice of ways instruction in its proposed charge. During the Charge Conference, Defendants' counsel requested that the Court reconsider that decision:

> I didn't know if the Court was willing to add anything on choice of ways or whatever -- you know, however the Court decides. But I do think it might be – some appropriate language not in -- that goes somewhat in step with the Hills and Ridges that you've already –

(Doc. 104 at 14:3-7.) This was Defendants' counsel's entire request on the issue. Rather than a "request[ ]" for an instruction as Defendants now portray it (Doc. 96 at 18) or an objection to the Court's proposed charge, Defendants' statement is merely a suggestion that some additional language "might be . . . appropriate," but Defendants would leave it to "however the Court decides." (Doc. 104 at 14:3-7.)

Although not framed as an objection, the Court essentially treated it as such and properly declined to instruct the jury on the choice of ways doctrine, explaining the reasons for doing so. *See supra* pp. 7-8. Specifically, the Court found that an issue concerning instructing a jury about the choice of ways doctrine should be analyzed pursuant to Pa. SSJI

26

(Civ.) § 13.220, "Assumption of Risk." This determination was based in part on § 13.220's

Subcommittee Note which cited *Carrender v. Fritterer*, 469 A.2d 120, 125 (Pa. 1983), a

choice of ways case, in explaining the applicability of the "assumption of the risk defense."

Section 13.220 does not provide a jury instruction, and the Subcommittee Note begins by

advising that "[n]o jury instruction is provided here because assumption of the risk is a

question for the court to decide upon a nonsuit motion and not a matter for jury

determination in negligence actions." *Id.*

As relevant to this case, § 13.220 states as follows:

Assumption of the risk arises when a plaintiff consciously decides to tempt fate and face an appreciated danger. *Bullman v. Giuntoli*, 761 A.2d 566, 570 (Pa. Super. 2000). Assumption of the risk as a defense requires that the plaintiff saw, understood, and voluntarily faced the risk that caused injury. *Barrett v. Fredavid Builders, Inc.*, 685 A.2d 129, 131 (Pa. Super. 1996).

This defense has been generally replaced by comparative negligence. It remains viable only under specific circumstances. *Staub v. Toy Factory, Inc.*, 749 A.2d 522, 528 (Pa. Super. 2000). No jury instruction is provided because assumption of the risk is a question for the court to decide and not a matter for the jury in negligence cases. See *Struble v. Valley Forge Military Acad.*, 665 A.2d 4, 8 (Pa. Super. 1995). The court can only find that the plaintiff has assumed the risk where it is beyond question that the plaintiff voluntarily and knowingly faced an obvious danger. *Long v. Norriton Hydraulics, Inc.*, 662 A.2d 1089, 1091 (Pa. Super. 1995).

When proven, assumption of the risk is a total bar to recovery. . . .

Assumption of the risk remains a viable defense when the court can say to a certainty that the plaintiff's comparative negligence is 100 percent. In that case, a nonsuit should be granted. In *Carrender v. Fitterer*, 469 A.2d 120, 125 (Pa. 1983), years after comparative negligence was the law, the Supreme Court ruled that a plaintiff assumed the risk of injury when she fell after parking her car in an icy area knowing that there were safer areas in which to park.

Pa. SSJI (Civ) § 13.220.

Based on this guidance, the Court's determination that the circumstances related to Plaintiff's chosen path in this case were distinguishable from those in *Carrender*, and the Court's decision in the Rule 50(a) context that there was a legally sufficient basis for a reasonable jury to find for Plaintiff, *see supra* p.5, the Court concluded that no instruction on the choice of ways doctrine was proper. Notably, Defendants did not disagree with the Court's analysis of the need for a choice of ways jury instruction or make any comment about it whatsoever. Rather, Defendants' counsel said, "Very well, Your Honor. Thank you." (Doc. 104 at 15:8.)

The fact that Pennsylvania Superior Court cases have found that a choice of ways instruction *may* be warranted in the comparative negligence context, *see, e.g. Mirabel*, 57 A.3d at 153-54, does not change the Court's determination that the charge was not appropriate here. *Mirabel* directs that

> [i]n order for there to be sufficient evidence to warrant a jury instruction for the doctrine, there must be "evidence of (1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger." *Id.* (citation omitted). The "choice of ways" doctrine has a narrow application and it should only be applied in "the clearest case." *Oswald*, 448 A.2d at 2. In cases in which 'the doctrine has been applied to find that the plaintiff was contributorily negligent, the danger the plaintiff chose to confront was indisputably obvious." *O'Brien v. Martin,* 432 Pa. Super. 323, 638 A.2d 247, 249–50 (1994).

57 A.3d at 154.

First, in this case, there was no evidence of "a safe course" given the undetectability of black ice, the unrefuted testimony that plaintiff slipped and fell on black ice, and the lack of evidence that the lot where Plaintiff was parked had been salted or sanded.[3] "Black ice is 'thin hard ice which is transparent and often difficult to see, esp. as deposited on a road in cold weather.'" *Ackerman v. U-Park, Inc.*, 951 F.3d 929, 931 (8th Cir. 2020) (quoting Oxford English Dictionary Online[4]).  "The overriding principle behind the many definitions of black ice is that it is either invisible or nearly invisible[;] transparent or nearly transparent." *Nerowski v. Essendant Co.*, No. 1:20-CV-589, 2021 WL 5054006, at *3 (W.D. Mich. Aug. 18, 2021) (citation omitted).  Second, given Plaintiff's planned course around a visible small mound of snow en route to her car, her chosen path was not a "dangerous course."  Third, because Plaintiff slipped and fell on black ice which she did not detect, there are no "facts which would put a reasonable person on notice of the danger," 57 A.3d at 154, nor is there any evidence that Plaintiff had "actual knowledge of the danger," *id.*

In *Updyke*, the Superior Court found that the defendant "was clearly not entitled to a jury instruction on the [choice of ways] doctrine, as [the plaintiff] had neither actual nor constructive notice of the patch [of ice]." *Id.* at 552.  Given the similarity of circumstances in

---

[3] Donald Pleau testified about the process of plowing, sanding, and salting at Kalahari.  He testified that he had no knowledge of the lot at issue being salted or sanded.  (Doc. 101 at 144:19-145:3.)  Mr. Pleau agreed that the log sheet for February 11, 2023, for the parking lot in question contains "places where people can check off for shoveled, salted, plowed," but the "description of work" in the relevant log only indicates "plowing snow."  (*Id.* at 146:10-18 (referencing Pl.'s Ex. 13 at 4).)

[4] https://www.oed.com/view/Entry/19670?redirectedFrom=black+ice#eid19401002.

this case and Defendants' failure to show that sufficient evidence warranted the instruction, the Court did not err in failing to instruct the jury on the choice of ways doctrine.

## V. CONCLUSION

For the reasons set out above, "Defendants' Motions for Post-Trial Relief Pursuant to F.R.C.P. 50(b)" (Doc. 95) will be denied.  A separate Order will enter.

Robert D. Mariani
United States District Judge

30